IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TAMMY ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:22-cv-478-JTA |
| | ) | (WO) |
| MARTIN J. O'MALLEY,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), the claimant, Tammy Adams ("Adams") brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[2] The Commissioner denied Adams's claim for a period of disability and Disability Insurance Benefits ("DIB"). (R. 12-27.) The Court construes Adams's brief in support of her Complaint (Doc. No. 17) as a motion for summary judgment and the Commissioner's brief in opposition to the Complaint as a motion for summary judgment (Doc. No. 20). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).

After careful scrutiny of the record and the motions submitted by the parties, the Court finds that Adams's motion for summary judgment is due to be GRANTED, the

---

[1] Martin J. O'Malley was appointed Commissioner for the Social Security Administration on December 20, 2023 and is automatically substituted as the defendant. *See* Fed. R. Civ. P. 25(d).

[2] Document numbers as they appear on the docket sheet are designated as "Doc. No."

Commissioner's motion for summary judgment is due to be DENIED, the decision of the Commissioner is due to be REVERSED, and this matter is due to be REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   PROCEDURAL HISTORY AND FACTS

Adams is an adult female[3] with a high school education[4] who previously worked as an information service assistant or information center specialist. (R. 33, 43.)[5] She alleged an amended disability onset date of January 23, 2020,[6] due to arthritis, high blood pressure, high cholesterol and peripheral neuropathy in her feet and hands. (R. 32, 34, 49, 181-184.)

On April 28, 2020, Adams protectively filed an application for a period of disability and DIB under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. (R. 181-184.) The application was denied initially and on reconsideration. Following an administrative hearing, the Administrative Law Judge ("ALJ") returned an unfavorable decision on February 1, 2022. (R. 12-27.) Adams sought review by the Appeals Council, and it denied her request. (R. 1-6.) Thus, the hearing decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g).

---

[3] She was 57 years old at the time of the administrative hearing. (R. 28, 181.)

[4] Adams reported that she obtained her "GED[.]" (R. 234.)

[5] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 16.)

[6] Adams initially claimed an alleged disability onset date of May 1, 2016, but amended the date during the administrative hearing. (R. 15, 32, 49, 181-184.)

On August 12, 2022, Adams filed this civil action for judicial review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. (Docs. No. 17, 20.) This matter is ripe for review.

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for

determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145-46 (11th Cir. 1991).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

## III.    STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB must prove that she is disabled. *See* 20 C.F.R. § 404.1505. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by an ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds

that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that she is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV.    ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Adams met the insured status requirements of the Social Security Act through December 31, 2021, but had not engaged in substantial gainful activity since the alleged amended onset date. (R. 18.) The ALJ determined that Adams suffers from bilateral osteoarthritis of the ankles with chronic pain, a severe impairment that significantly limits her ability to perform basic work activities. (R. 12.) The ALJ also found that Adams has the following non-severe impairments: obesity, high blood pressure, high cholesterol, mild carpal tunnel syndrome, depression, and nicotine abuse. (R. 18.)

The ALJ concluded that Adams's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19.) The ALJ considered the criteria of Social Security Ruling ("SSR") 19-2p (obesity) and concluded that "obesity does not prevent [Adams] from engaging in at least light level work activity." (R. 20.) The ALJ also considered whether Adams had an ankle impairment by reviewing the criteria for Section 1.18 (abnormality of a major joint in an extremity) and noted that numerous medical sources from 2021 stated that Adams had a normal gait and intact or normal range of motion. (*Id.*)

The ALJ also concluded that Adams retains the RFC to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b).[7] The ALJ determined that,

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of

> [Adams] is able to climb ramps and stairs on a frequent basis; however, she is unable to climb ladders, ramps, and stairs. She is able to engage in frequent balancing activities and unlimited stooping, kneeling, crouching and crawling. [Adams] must avoid exposure to hazardous machinery or unprotected heights.

(R. 20 (sic).) The ALJ explained that she "found the assessments of the State Agency consultants persuasive[,]" but she concluded Adams had the RFC for "light level work instead of medium level work as determined by the State Agency consultants (Exhibits 1A and 5A)." (R. 22.) The ALJ reached this conclusion based on "a review of the overall medical record in this case along with the testimony presented at the hearing." (*Id*.) The ALJ noted Adams's testimony that "she had nerve damage and neuropathy in her feet, legs, and hands" and "she was taking Hydrocodone for pain in her feet, hands, and ankles." (*Id*.) The ALJ further noted an EMG/NCV test report indicated Adams had a "moderate median nerve compromise at or near her left wrist, and mild median nerve compromise at or near her right wrist." (*Id*.)

Considering Adams's past relevant work as an information center specialist, which is a sedentary and skilled occupation, the ALJ determined that Adams is able to perform her past relevant work because "[it] does not require the performance of work-related activities precluded by [her] residual functional capacity (20 CFR 404.1565)." (R. 22.) Based on the foregoing, the ALJ determined Adams had not been disabled from the alleged amended onset date through the date of the hearing decision. (R. 22.) The ALJ concluded

---

performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

that Adams is not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. 23.)

## V.    DISCUSSION

Adams presents six arguments in this appeal. First, she argues the ALJ erred when the ALJ failed to ask the vocational expert if her testimony was consistent with the Dictionary of Occupational Titles. Second, she argues the ALJ erred because the testimony of the vocational expert was unreliable. Third, she argues the ALJ erred when the ALJ found she retained the ability to perform a wide range of light work activity. Fourth, she argues the ALJ erred when the ALJ found her carpal tunnel syndrome, depression and anxiety were non-severe impairments. Fifth, she argues the ALJ erred by failing to consider the combined impact of her impairments. Sixth, she argues the ALJ committed harmful error by finding she is not disabled when Medical Vocational Rule 202.06 conflicts with that finding.

Upon a thorough review of the record and the parties' submissions, the Court finds that Adams's third argument warrants reversal and remand for further proceedings.

### A.    Dictionary of Occupational Titles

Citing Social Security Ruling 00-4p and *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353 (11th Cir. 2018), Adams contends the ALJ failed to ask the vocational expert ("VE") if her testimony was consistent with the Dictionary of Occupational Titles. (Doc. No. 17 at 5.) The Court disagrees.

This Court recently detailed the process employed by an ALJ in determining whether a claimant can return to their past relevant work.

In considering whether a claimant can return to the claimant's past relevant work, "[t]he ALJ must take all the duties of a claimant's past work into consideration and evaluate whether the claimant can still perform them in spite of the severe impairment or combination of impairments." *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 858 (11th Cir. 2015); *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990). In support of a claim, "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386 at *3 (S.S.A. Jan. 1, 1982); *Cantu*, 2021 WL 960686 at *4. "The ALJ may rely on information contained in the Dictionary of Occupational Titles (DOT) to determine whether a claimant can perform his past relevant work." *Rivera-Cruzada v. Comm'r of Soc. Sec.*, 741 F. App'x 737, 739 (11th Cir. 2018). As Social Security Ruling 00-4p explains, the Commissioner "rel[ies] primarily on the DOT (including its companion publication, the [Selected Characteristics of Occupations] for information about the requirements of work in the national economy. [The SSA] use[s] these publications at steps 4 and 5 of the sequential evaluation process." SSR 00-4P, 2000 WL 1898704 at *2 (S.S.A. Dec. 4, 2000). "Similarly, [20 C.F.R. § 404.1566(d)] explicitly names the DOT as one of the main sources of jobs data the SSA relies on, and provides that ALJs 'will take administrative notice of reliable job information available' in the DOT." *Washington*, 906 F.3d at 1364-65 (citations omitted).

"The ALJ may also rely on the testimony of a VE, 'an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments.' " *Rivera-Cruzada*, 741 F. App'x at 739 (citation omitted); SSR 00-4P, 2000 WL 1898704 at *2; 20 C.F.R. § 404.1560(b)(2) ("We will ask you for information about work you have done in the past. We may also ask other people who know about your work. ... We may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity."). However, "[g]enerally, vocational expert testimony is not necessary to determine whether a claimant can perform his past relevant work." *Hernandez v. Comm'r of Soc. Sec.*, 433 F. App'x 821, 823 (11th Cir. 2011) (citing *Lucas*, 918 F.2d at 1573 n.2); *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 918 (11th Cir. 2019) ("The testimony of a vocational expert is only required to determine whether the claimant's RFC permits her to do other work after she has met her initial burden of showing that she cannot do past work.").

*Plott v. Kijakazi*, No. 3:22-CV-78-CWB, 2023 WL 6049585, at *4 (M.D. Ala. Sept. 15, 2023).

In *Washington*, the Eleventh Circuit addressed the ALJ's responsibility under Social Security Ruling ("SSR") 00-4p.  The Circuit noted,

> in the section entitled "The Responsibility To Ask About Conflicts," the Ruling states that ALJs have "an affirmative responsibility to ask about any possible conflict between [ ] VE or VS evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. The Ruling then breaks down this responsibility into two parts, explaining that, "in these situations," the ALJ must first "Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT"; and, second, if "the VE's or VS's evidence appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id*. (emphasis added).

*Washington*, 906 F.3d at 1363. The Circuit concluded that "SSR 00-4p is properly understood to impose an affirmative duty on the ALJs to identify apparent conflicts, ask the VE about them, and explain how the conflict was resolved in the ALJ's final decision." *Id*. at 1365. Otherwise stated, "[w]here the VE's evidence is inconsistent with the information in the DOT, the ALJ must resolve the conflict before relying on the VE's evidence to support a determination that a claimant is or is not disabled." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021).

Here, contrary to Adams's assertion, the hearing transcript establishes that the ALJ specifically asked the VE if her testimony would be consistent with the information provided in the DOT.

| | |
|---|---|
| ALJ: | All right. Ms. Cornelius, will your testimony be impartial, neutral, and consistent with the DOT and its companion volumes unless you tell me otherwise? |
| VE: | Yes, Your Honor. |

(R. 42.) In addition, Adams does not identify any conflict between the DOT and the VE's testimony. Nor has Adams shown that any unresolved, apparent conflict existed between the VE and the DOT regarding her past relevant work. Accordingly, Adams's argument is without merit and the Court finds no reversible error.

B.     Reliability of VE Testimony

Adams next argues that the VE's testimony was "unreliable" and "inaccurate" because the VE erroneously classified her past relevant work was as an information center specialist (DOT#032.262-010), performed at the sedentary exertional level. (Doc. No. 17 at 6.) She contends her past relevant work is "best classified as a Directory Assistance Operator (DOT#235.662[-]018), performed at the sedentary exertional [level] and is semi-skilled." (*Id*.) She asserts her argument is supported by her hearing testimony describing her performed duties for the position and the statements from two state agency reviewers who classified her past work title as directory assistance operator, DOT#235.662-018. (*Id*.) (citing R. 32-33, 57, 89.) She further asserts the misclassification by the VE "matters" because "she is more limited than found by the ALJ" as her "[b]ilateral [carpel tunnel syndrome], compounded by obesity, impaired [her] hand functionality" and her actual past relevant work as a directory assistance operator required constant reaching and handling and frequent fingering. (*Id*. at 7.)

Again, Adams has failed to carry her burden. "The claimant bears the initial burden of proving that she is unable to perform her previous work[,]" and the "necessary consequence of this burden is that the claimant has the burden of showing that certain work experience is not past relevant work." *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir.

1991) (citations omitted). Adams offered no evidence at the hearing to counter the VE's testimony that her work experience should be classified as a DOT directory assistance operator. (R. 42-47.) At the outset, Adams raised no objection to the VE's credentials at the hearing. (R. 42.) When Adams asked the VE to explain her conclusion that Adams's past relevant work was as a DOT directory assistance operator, and not an information center specialist, the VE explained:

> Based on [Adams's] testimony, she was information service agent or information center specialist or a customer service representative. She worked in a call center and she received – complaints from individuals that she helped out. She asked them questions. She made referrals. She put data into the computer. She was aware of what needed to be done and follow through. So she wasn't just giving direction information like telephone numbers or whatever. She was helping in making directions to others, and her job type, AT&T would have allowed for that as well as the fact that she was on that job greater than two years. I think she was on it like eight or nine.
>
> . . . . Which would allow for her to learn the job of that magnitude.

(R. 45-46.) Adams raised no objection to this testimony. Instead, Adams responded by posing questions regarding the availability of that position in the national economy considering a hypothetical individual who was limited in fine manipulation and gross manipulation. (R. 46.) Adams then questioned the VE as to how much time off task was permitted for that job and the number of absences permitted per month for that job. (R. 46-47.)

Adams's failure to object or raise an argument before the ALJ concerning the VE's testimony that her past relevant work should be classified as a DOT directory assistance operator forecloses her from raising this issue now. *See McDaniel v. Kijakazi*, No. 22-CV-21201, 2023 WL 5510277, at *14 (S.D. Fla. Aug. 10, 2023), *report and recommendation*

*adopted*, No. 1:22-CV-21201-JLK, 2023 WL 5507774 (S.D. Fla. Aug. 25, 2023) ("Several courts have found that a claimant's failure to object or raise an argument before the ALJ relative to her past relevant work forecloses the claimant's ability to raise the issue for the first time on appeal.") (listing cases); *Schmidt v. Comm'r of Soc. Sec.*, No. 2:17-cv-333, 2018 WL 3805863, at *6 (M.D. Fla. Aug. 10, 2018) (holding the ALJ did not err in defining the claimant's past relevant work as including the position of accounting clerk where the claimant did not object to the VE's testimony that her past relevant work included that job); *Crooms v. Kijakazi*, No. 1:21-CV-36-CWB, 2023 WL 6377299, at *7 (M.D. Ala. Sept. 29, 2023) (finding waiver of argument on appeal because claimant did not challenge or object to the classification of her past work).[8] Further, contrary to Adams's argument, the VE's testimony was not unreliable as, without an objection or other reason to doubt the VE's credibility, the VE's credentials provide substantial evidence to support the ALJ's reliance on the VE's testimony. *See Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010). Accordingly, Adams's contention is without merit and the Court finds no reversible error.

C.      Past Relevant Work Under Social Security Ruling 82-62

Adams argues the ALJ erred when the ALJ found she retained the ability to perform her past relevant work because the ALJ failed to make specific findings in accordance with

---

[8] The Court observes that Adams mentioned in passing, in correspondence to the ALJ after the hearing, that neither DOT job description for user support analyst or directory assistance operator "matches exactly what [she] described as her past work; however, the job suggested by the VE **seems too highly skilled to be an adequate representation of work performed by** [her]." (R. 275-76) (emphasis in original). This statement by Adams does not convey a direct challenge, nor state an explicit objection, to the VE's testimony.

SSR 82-62. (Doc. No. 17 at 9.) Although the Government does not directly address SSR 82-62, it argues that Adams has failed to demonstrate harmful error. (Doc. No. 20 at 5.)

As aforementioned, at the fourth step, a claimant will be found not disabled if she can return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). To determine whether a claimant can perform her past relevant work, "the ALJ must consider the specific duties of the claimant's past work and evaluate the claimant's ability to perform them in spite of her impairments." *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010) (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990)). Again, the claimant bears the burden of showing her inability to perform past work. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

SSR 82–62 provides that "[t]he RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of 'not disabled.' " SSR 82–62, 1982 WL 31386, at *3. SSR 82-62 explains the importance of developing the record with respect to whether a claimant can perform her past relevant work:

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and *must be developed and explained fully in the disability decision*. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

*Id*. (emphasis added). Therefore, when determining whether a claimant has the ability to perform her past relevant work, the ALJ's decision must explicitly contain findings of fact

as to the claimant's RFC; the *physical and mental demands of the past work*; and whether the claimant's RFC would permit a return to the past relevant work. *Id.* at *4 (emphasis added).

SSR 82-62 explains that "the claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." *Id.* at *3.

> Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

*Id.* In addition, the ALJ may rely on a VE's testimony regarding the physical and mental demands of the claimant's past work. 20 C.F.R. § 404.1560(b)(2).

Here, the ALJ found that Adams is capable of performing her past relevant work as information center specialist because that work "does not require the performance of work-related activities precluded by [Adams's] residual functional capacity." (R. 22.) The ALJ's entire discussion with respect to this finding is as follows:

> The vocational expert testified that considering [Adams's] residual functional capacity as stated above in Finding #5, she was able to return to her past relevant sedentary work as an information center specialist. As required by SSR 82-62, this work was substantial gainful activity, performed long enough for [Adams] to achieve average performance, and performed within the relevant period (Exhibit 10E). In comparing [Adams's] residual functional capacity with the physical and mental demands of this work, I find

that [she] is able to perform this work as she actually and generally performed this work in the past.

*Id*. This explanation of the ALJ's finding that Adams is capable of performing her past relevant work, without more, is insufficient and does not comport with SSR 82-62's requirement that the ALJ make specific findings of fact. *See, e.g.*, *Rodriguez v. Kijakazi*, No. 21-cv-21098, 2022 WL 3371570, at *7–10 (S.D. Fla. July 22, 2022), *report and recommendation adopted* 2022 WL 3370788 (S.D. Fla Aug. 16, 2022); *Perez v. Comm'r of Soc. Sec.*, No. 2:14-cv-2-FtM-CM, 2015 WL 1277832, at *5–6 (M.D. Fla. Mar. 20, 2015); *Johnson v. Comm'r of Soc. Sec.*, No. 6:12–cv–123–Orl–GJK, 2013 WL 461278, at *6 (M.D. Fla. Feb. 7, 2013) (holding that a conclusory determination of a claimant's ability to perform past relevant work, without analyzing the physical and mental demands of the position, required a reversal and sentence four remand).

A review of the ALJ's development of this issue at the hearing establishes that the ALJ did not make any effort to obtain information about the physical and mental demands of Adams's past work as she performed it. Rather, the ALJ asked cursory questions about Adams's past work so the VE could identify the DOT job classification:

ALJ:   Ms. Adams, let's talk a little bit about what you have done for work in the past. I am showing that from 2007 until 2016, May of 2016, that you worked for AT&&T and you listed that as an information service assistant. What did you do as a service assistant?

ADAMS:   I answered the phone at 411 and gave out information on addresses and phone numbers and types of business, restaurants.

ALJ:   Ok. And did you retire from that job, or did they do away with it?

16

ADAMS:     They did away with that particular job.

                          …..

ALJ:       All right. Have you been able to evaluate Ms. Adams' past work based upon her testimony and what's in the record[?]

VE:        I did, Your Honor, but I do have a question.

ALJ:       Sure.

VE:        As to whether or not what type of information – what she was. Was she in a call center type setting?

ADAMS:     Yes.

VE:        That's what I thought. Thank you, your Honor.

                          …..

ALJ:       Okay. Can you go back and give us the name of that again? ....

                          ....

VE:        Information center specialist, 032.262-010, sedentary, skilled, SVP:7.

(R. 33, 42-43.)

The ALJ failed to develop the record or elicit further testimony from Adams on the specific physical and mental demands of her past relevant work as she performed it in order to adequately assess her ability to perform that work now. For example, the ALJ failed to inquire as to the frequency Adams was required to interact with co-workers or supervisors, or how long Adams would typically sit or stand during the course of an eight-hour

workday,[9] or if Adams was required to type or hold a phone for her job. Such inquiries are important. For example, the VE testified that Adams, as an information center specialist or customer service representative, would input data into the computer (R. 45), which conflicts with Adams's testimony that typing causes cramping of her hands (R. 42). The ALJ also did not discuss evidence from the medical record regarding how Adams's impairments did or did not limit her ability to perform the duties of her past relevant work either as she performed it or as it is generally performed.

This failure is particularly noteworthy because Adams testified that she believed she has been unable to work since January 2020 due to "the nerve damage, the arthritis, and the neuropathy making my feet swell and hands." (R. 34.) She also testified that she started using a walker "a month ago" to help her "from falling down" if she is "going to have to walk more than a few steps." (R. 35.) She also testified that she started having pain in her hands around six months prior to the hearing, that her hands cramp and become numb every three to five minutes of folding laundry, that typing "really makes my hands hurt and cramp up[,]" and that she was using headphones for the telephonic hearing because her hand hurts when she holds the telephone. (R. 38, 41, 42.) Moreover, her testimony is supported by objective medical testing in January 2021 that revealed that she had "moderate median nerve compromise at or near the wrist on the left" and "mild median nerve compromise at or near the wrist on the right." (R. 790-791.) Thus, evidence as to the reasons for Adams's

---

[9] The record evidence shows that Adams reported in a Function Report that she could "walk and sit at a desk for 8 hours" before her injuries but is unable to do those things now as she is "not able to sit or stand more than 5-10 minutes at a time." (R. 267, 271.)

physical inability to complete the requirements of her past relevant work are in the record and should be discussed.

Further, SSR 82-62 explains that for "a claim involving a mental/emotional impairment care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety," including "speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." SSR 82–62, 1982 WL 31386, at *3. The ALJ's decision is devoid of such analysis with respect to Adams's depression. Indeed, the ALJ did not elicit testimony from Adams nor the VE regarding the mental demands of Adams's past relevant work and no information about the mental demands of the work is in the record.

Reviewing the record as a whole, the Court concludes that the ALJ's step four finding as to Adams's past relevant work as she actually performed it is not supported by substantial evidence, nor did the ALJ apply the proper legal analysis. The ALJ's analysis of Adams's ability to perform her past relevant work is inadequate and falls short of the requirements outlined in SSR 82-62. *See Del Rosario-Castillo v. Astrue*, No. 09-61665-CIV, 2010 WL 3385508, at *12 (S.D. Fla. Aug. 9, 2010) (finding "the ALJ's abbreviated discussion of the plaintiff's ability to perform her past relevant work falls short of the full explanation and development and clear and explicit resolution mandated by SSR 82-62"), *report and recommendation adopted* 2010 WL 3385502 (S.D. Fla. Aug. 25, 2010); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("It is well-established that the

ALJ has a basic duty to develop a full and fair record."); *Rodriguez*, 2022 WL 3371570, at *8–10.

The ALJ has failed to provide sufficient reasoning for concluding that Adams's depression and physical impairments are compatible with the performance of her past relevant work.[10] The failure of the ALJ to develop the record as to the physical and mental demands of Adams's past relevant work as she performed it, and failure to meaningfully discuss how Adams's depression might affect her ability to perform her past relevant work require remand.[11] *See Barrio v. Comm'r of Soc. Sec. Admin.*, 394 F. App'x 635, 638 (11th Cir. 2010) (reversing and remanding case because, in part, the "ALJ's analysis fails to

---

[10] The ALJ found Adams had the non-severe mental impairment of depression at step two. (R. 18.) The ALJ noted that "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The *mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment*." (R. 19) (emphasis added). Yet, the ALJ failed to provide the "detailed assessment" when evaluating Adams's RFC. In the RFC assessment, the ALJ mentioned that Adams testified she "sometimes suffers from anxiety" and the ALJ summarized a treatment note from February 10, 2021, that indicated Adams reported her symptoms of depression and anxiety had improved with medication. (R. 21, 22.) The ALJ provided no further discussion of Adams's depression. The ALJ failed to account for Adams's depression in the RFC assessment *in detail* and failed to discuss whether her depression caused any work-related limitations. These failures by the ALJ warrant remand as well. *See Martin v. Kijakazi*, No. 20-cv-10149, 2022 WL 17987332, at *9 (S.D. Fla. Sept. 28, 2022) (reversing and remanding where the ALJ failed to address the claimant's mild limitations in the RFC assessment); *McDaniel*, 2023 WL 5510277, at *24 (reversing and remanding where the ALJ failed to consider the mild limitations in functional areas in the RFC assessment); *Dulude v. Comm'r of Soc. Sec.*, No. 20-cv-00890, 2021 WL 4026268, at *4 (M.D. Fla. Sept. 3, 2021) (concluding that "reversal is mandated" where the reviewing court "cannot determine whether the ALJ followed the proper legal analysis regarding [the claimant's] mental impairments" because "the ALJ found [the claimant's] mental impairments [were] non-severe" and "discussed only [the claimant's] many physical impairments but did not discuss whether mild mental limitations in these areas may cause additional work-related limitations").

[11] The Court does not find these failures to be harmless error as the Commissioner argues. (*See* Doc. No. 20 at 5.) The Court is persuaded by the numerous cases cited herein which suggest that the ALJ's failure constitutes reversible error.

discuss meaningfully how Barrio's anxiety and depression might affect her ability to perform her work as an assignment clerk").

D.     Scrivener's Error

The Court *sua sponte* notes the scrivener's error in the RFC. In her RFC finding, the ALJ stated that Adams "is *able to climb ramps and stairs* on a frequent basis; however, she is *unable to climb* ladders, *ramps, and stairs*." (R. 20) (emphasis added). This statement is inconsistent. Either Adams is unable *or* able to climb ramps and stairs. It is impossible for both statements to be correct. Notwithstanding, the Court concludes this error, which was not raised by either party, is harmless as the evidence of record suggests that the ALJ's error is a mere scrivener's mistake. The hearing transcript reflects that the ALJ asked the VE a hypothetical involving an individual who can frequently climb ramps and stairs, but "no ladders, ropes and scaffolds …." (R. 43). Hence, it appears that the ALJ meant to conclude that Adams is able to frequently climb ramps and stairs, but unable to climb ladders, ropes, and scaffolds. Because Adams failed to point out the error to the Court, it appears she did not believe this error was significant. Accordingly, the Court finds this error did not effect Adams's substantial rights and is thus harmless; but urges the ALJ to correct this mistake on remand.

E.     Remaining Arguments

Because the case is being remanded to the Commissioner for further consideration, the Court need not address Adams's remaining arguments. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (stating that where remand is required, it may be unnecessary to review other issues raised) (citations omitted); *see also McClurkin v.*

*Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (finding no need to analyze other issues when case must be reversed due to other dispositive errors). On remand, however, the ALJ should reassess the entire record, providing sufficient reasons and readily identifiable evidentiary support for her decision under the applicable law. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (holding that, on remand, the ALJ must reassess the entire record) (citation omitted).

## VI.   CONCLUSION

After review of the administrative record, and considering all of the arguments, the Court finds the Commissioner's decision is not supported by substantial evidence or the proper legal analysis.[12] Hence, it is ORDERED as follows:

1.   The claimant's motion for summary judgment (Doc. No. 17) is GRANTED.

2.   The Commissioner's motion for summary judgment (Doc. No. 20) is DENIED.

3.   The decision of the Commissioner is REVERSED.

4.   This matter is REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

A separate judgment will issue.

---

[12] In reversing the Commissioner's decision, the Court expresses no opinion regarding Adams's entitlement to disability. The Court here holds only that the ALJ's decision demonstrates errors requiring reversal.

DONE this 19th day of March, 2024.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE